UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JUSTIN BUNCH | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:19-cv-1092-DRL-MGG |
| | ) |
| LT. BENNIT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MOTION TO REOPEN DISCOVERY FOR A LIMITED PURPOSE

Defendants, by counsel, Archer Rose, Jr., respectfully move the Court to reopen discovery for the limited purpose of addressing newly discovered evidence of a possible fraud upon the Court.

### Designation of Evidence in Support

In support of the instant motion, Defendants designate the following evidence:

Exhibit A:   Deposition Transcript of Justin Bunch

Exhibit B:   Malcolm Cobb IDOC OIS Bed History

Exhibit C:   Justin Bunch IDOC OIS Bed History

Exhibit D:   Declaration of Amber Smith

Exhibit E:   Declaration of Robert Bennett

Exhibit F:   Declaration of Shawna Morson

### Factual Background

Plaintiff, Justin Bunch ("Mr. Bunch") is a state prisoner in the custody of the Indiana Department of Correction ("IDOC") who was housed at the Miami Correctional Facility ("Miami") in 2018. [Exhibit A at 15:22-17:01.] Mr. Bunch is reportedly a former member of an IDOC Security Threat Group ("STG") – the Saxon

1

Knights – who attempted to form an anti-gang 501(c) non-profit. [*Id* at 19:23-26:07.] In February 2018, Mr. Bunch requested protective custody due to purportedly related threats to his health and safety. [*Id* at 52:04-25; ECF 5-2 at 13-15.] Mr. Bunch's request was denied by Defendant Williams. [ECF 5-2 at 13.] On November 28, 2018, Mr. Bunch was assaulted by other offenders and suffered several physical injuries. [ECF 5-2 at 19-21.] Mr. Bunch contends that the November 28th assault was preceded by a related assault on November 22nd and multiple requests for protection, *in writing and in person*, to Defendants Bennett, Hyatte, and Smith. [ECF 38 at 1-2.] After the November 28th assault, Mr. Bunch was housed for some time in the Miami infirmary with another offender, Malcolm Cobb ("Mr. Cobb"). [Exhibit A at 96:08-98:09.] Mr. Bunch and Mr. Cobb were not housed together in the months preceding the November 28th assault. [Exhibit B-C.]

## Procedural Background

Mr. Bunch initiated this cause of action with the filing of his complaint on November 21, 2019. [ECF 1; ECF 5-2.] In his complaint, Mr. Bunch alleged, in part, as follows:

> 2. ON NOVEMBER 22ND, The PLAINTIFF WAS BRutaly ASSAULTED, Suffering A BRoken ARM, BRoken TEETh AND A HEAD Injury At the HAnDs of otheR offenDeRs, officeR in ChaRGe Sgt Smith AND LT. Bennit weRe Notified iN whiting AND IN PeRson of The Substanial Risk of HaRm to The PlaiNTiffs safety AND well Being, PlaiNTiffs situation WAS BlAtAnly DenieD AND IgnoReD (SEE ExHiBit B1, B2)

> 3. ON NOVEMBER 23RD 2019, PLAINTIFF NOTIFIED SgT SMITH A SECOND TIME AS IT PERTAINS TO BOTH His SUbstantial INjuRy AND A SERIOUS Risk to The PLAiNTIFFS SAFETY, PLAINTIFFS Request to Be MOVED WAS IGNORED AND Plantiffs WRitten NOtification WAS Denied. (SEE EXHIBIT C)

As exhibits to his complaint, Mr. Bunch submitted three (3) IDOC requests for interview forms dated "11-22-2018" (Ex. B1.), "11-22" (Ex. B2), and "11-23-18" (Ex C). [ECF 5-2 at 16-18.] Upon screening, Mr. Bunch was permitted to proceed on an Eighth Amendment failure-to-protect claim for monetary damages against Defendants Bennett, Smith, and Williams. [ECF 4.]

On August 3, 2020, Mr. Bunch moved for leave to amend his complaint. [ECF 30.] Mr. Bunch's motion was granted and his amended complaint[1] screened by the Court. [ECF 38.] Upon screening, the Court permitted Mr. Bunch leave to proceed on an Eighth Amendment failure-to-protect claim against Warden William Hyatte, Unit Team Manager James Williams, Lieutenant Robert Bennett, and former IDOC Sergeant Amber Smith in their personal capacity for money damages. [ECF 38 at 4.] The Court summarized Mr. Bunch's allegations as contained in the amended complaint as follows:

> As with his original complaint, Mr. Bunch alleges that, on February 2, 2018, he submitted a written request for protective custody because a group of other inmates at the Miami Correctional Facility (MCF) had assaulted him and threatened to do so again. Unit Team Manager James

---
[1] Mr. Bunch did not attach any exhibits to his amended complaint. [ECF 39.]

> Williams denied this request. On November 22, 2018, these inmates assaulted Mr. Bunch, resulting in a broken arm, broken teeth, and a cranial injury. Shortly thereafter, Mr. Bunch notified Sergeant Amber Smith and Lieutenant Robert Bennett1 *in person and in writing* of the ongoing risk to his safety posed by these inmates, but they didn't take any steps to protect him. On October 30, 2018, he spoke directly to Warden William Hyatt and told him he was at risk of being attacked. The warden allegedly responded, I don't offer [protective custody] here. Don't break the law and you won't come to prison.
> On November 28, 2018, Mr. Bunch returned to his dormitory, and these inmates attacked him again by stabbing him and stomping on him. He went to the hospital and was in the infirmary for thirteen weeks as a result of his extensive injuries. He also developed severe anxiety disorder and posttraumatic stress disorder.

*Id* (internal quotation marks omitted; emphasis added).

The discovery deadline passed November 16, 2020. [ECF 48.] The dispositive motion deadline is January 4, 2021. [ECF 65.]

## Deposition of Mr. Bunch

On September 18, 2020, Mr. Bunch was deposed. [Exhibit A.] The three (3) IDOC requests for interview filed as exhibits to Mr. Bunch's original complaint were made exhibits to his deposition. [*Id* at 188-190.] Mr. Bunch was questioned regarding those documents. [*Id* at 85:06-96:13.] He testified that he sent or hand delivered these documents on November 22nd or 23rd to Defendants Smith and/or Bennett. [*Id*.] He also testified that he sent additional documents to Defendants Smith and Bennett at that time. [*Id*.] Mr. Bunch testified that he spoke in person to Defendants Hyatte[2], Smith, and Bennett in October or November 2018 regarding threats to his health and

---

[2] Mr. Bunch did not allege in person communication with Warden Hyatte in his initial complaint. [ECF 1.]

safety, identified the offender threatening him by nickname, location, and physical description, but his concerns were not addressed prior to the November assaults. [*Id* at 86:12-90:03, 93:01-25, 133:18-136:11, 138:09-139:07.] He testified that the assailants' names were unknown to him at that time. [*Id* at 95:07-13, 105:04-106:16, 134:07-24.] He confirmed that he spoke with a doctor in person on November 27, 2018, but did not complain of or request treatment for a broken arm, because he was speaking with a psychiatrist.[3] [*Id* at 140:08-143:05, 209-210.]

After the November 28th assault, Mr. Bunch testified that he was admitted to the infirmary at Miami, where he was housed with Offender Malcolm Cobb ("Mr. Cobb"). [*Id* at 96:08-98:09.] Mr. Cobb was described as a "legal beagle[] or a jailhouse lawyer" who "did quite a bit of paralegal work." [*Id*.] Mr. Bunch testified that he received advice but not assistance with the preparation of his complaint from Mr. Cobb. [*Id*.]

**Plaintiff's Production of Documents and Interrogatory Responses**

On September 25, 2020, Plaintiff filed a copy of his responses to Defendants' written discovery requests, including responsive documents. [ECF 53-55.] In particular, Plaintiff produced and filed several additional documents purportedly authored and submitted on November 22nd or 23rd. [*Id* at 13, 24, 50.] Of note, a letter addressed to Defendant Bennett is dated "11-23-18" and includes, in part, the following:

---

[3] Mr. Bunch's rationalization for failing to request medical care for his allegedly broken arm when face-to-face with Dr. Pintal was that "[i]t would be like asking a plumber to work on my car." [Ex. A at 142:24-143:05.]



*Id* at 50. The inclusion of "HURTADO" is curious, as when deposed, Mr. Bunch testified that he did known him as anything other than "COUNT" at that time. [Ex. A at 95:07-13, 105:04-106:16, 134:07-24.]

In his signed interrogatory responses, in pertinent part, Plaintiff made the following sworn responses:

> RESPONSE 1: PLEASE SEE, WRITTEN REQUESTS, HAND WRITTEN LETTER TO LT. BENNETT, REQUESTS TO SGT SMITH, REQUESTS TO SHARON HAWK, MEDICAL RECORDS, All This EVIDENCE SUPPORTS THE FACT THAT I WAS ASSAULTED ON 11-22-2018 AND SUFFERED A BROKEN ARM, BROKEN TEETH AND A HEAD INJURY,

ECF 53 at 3;

> RESPONSE 5: FORMAl REQUEST FOR PROTECTION, WRITTEN REQUESTS INTERVIEW WITH I.A., CORRESPONDENCE WITH A.C.L.U. AND STATE REP RYAN LAUER, LETTERS TO LT. BENNETT.

*Id* at 7;

RESPONSE 8: WARDEN W. HYATT, WAS TOLD IN PERSON, THAT OFFENDER THOMPSON A.K.A "D-MO" AND OFFENDER HURTADO A.K.A "COUNT" HAD THREATENED TO "FUCK ME UP" AND STABBED ME MULTIPLE TIMES, I INFORMED W. HYATT THAT I WAS IN THE CELL HOUSE WITH THESE OFFENDERS, I THEN INFORMED W. HYATT THAT I BELIEVED THOMPSON AND HURTADO WERE PAID TO ASSAULT AND INTIMIDATE ME BECAUSE I ATTEMPTED TO BETTER MYSELF & START AN OUTREACH (501c-3) PROGRAM, I ASKED W. HYATT TO PROTECT ME, HE FAILED TO DO SO.

U.T.M. JAMES WILLIAMS, (SEE FORMAL REQUEST FOR PROTECTION) AS WELL AS ATTACHED WRITTEN STATEMENTS AND REQUESTS, I INFORMED J. WILLIAMS IN DETAIL OF A SUBSTANTIAL RISK OF HARM TO MY LIFE

LT. BENNETTE, WAS NOTIFIED By WRITING REQUEST SLIPS, WRITING A DETAILED LETTER AND IN PERSON By OFFENDER Bunch LT. BENNETT WAS TOLD THE NAME OF THE OFFENDERS RESPONSIBLE FOR THE THREATS AND ASSAULTS, HE WAS NOTIFIED MULTIPLE TIMES.

SGT SMITH WAS NOTIFIED IN WRITING NO LESS THEN FOUR TIMES, Sgt smith WAS NOTIFIED IN DETAIL OF WHO WAS THREATING THE PLAINTIFF, WHY IT WAS HAPPENING AND WHAT WOULD HAPPEN IF SHE DIDNT HELP, Sgt smith WAS ALSO NOTIFIED IN PERSON OF A SUBSTAINTIAL RISK OF HARM TO THE PLAINTIFF, SHE WAS TOLD WHO WAS MAKING THE THREATS AND WHY.

EACH DEFENDANT HAD ACTUAL KNOWLEDGE OF AN IMPENDING HARM THAT WAS EASILY PREVENTABLE.

9

*Id* at 10;

7

RESPONSE 9:

> FORMAL REQUESTS FOR PROTECTION:
> &'s TWO
>
> REQUEST SLIPS: No Less Then 8 Explaining To The Defendants The Risk Of The Situation IN Detail
>
> WRITTEN letters: ONE To Lt Bennett, one To My Father, correspondence With A.C.L.U.
>
> MEDICAL RECORDS & MEDICAL REQUESTS
>
> HAND WRITTEN NOTES.

*Id* at 11; and

RESPONSE 15:

> SGT. SMITH AND LT BENNETT WERE Both NOTIFIED IN Deatail, OF THREATS OF IMMEDIATE DANGER, They WERE TOLD Exactly Who WAS MAKING the ThREATS AND Why, AND They WERE, WARNED IN ADVANCE OF The Assaults. This All happened Multiple TIMES, Multiple TIMES Sgt Smith & Lt Bennet WERE ASKED FOR HELP But Ignored the Plaintiff.

*Id* at 17.

### Discovery of the Possible Fraud

On December 28th and 29th 2020, undersigned counsel reviewed Mr. Bunch's deposition transcript, written discovery exchanged between the parties, and additional information in preparation to file a motion for summary judgment, in

whole or part.[4] During the course of this review, undersigned counsel sought to determine who responded to several of Mr. Bunch's requests dated November 22nd or 23rd, 2018. Defendant Smith does not recall the requests and did not respond to them; nor does she know who did. [Exhibit D.] Defendant Bennett likewise does not recall receiving any related document from Ofd. Bunch before the November 28th assault. [Exhibit E.] He does not know you responded to the requests for interview addressed to him. [*Id.*] The assistance of the Miami litigation liaison was enlisted in the ongoing attempt to identify the responding individual. The litigation liaison forwarded the requests to the Miami Grievance Specialist who knew happened to know the answer.

Shawna Morson is the Grievance Specialist at Miami. [Exhibit F at 1 ¶ 2.] As the Grievance Specialist at Miami, she oversees the IDOC Offender Grievance Process at Miami and has access to offender grievances and related records. [*Id* at 1 ¶ 3.] She is familiar with Mr. Cobb, his handwriting and grievance related tendencies, as he filed numerous grievances for himself and other offenders while previously housed at Miami. [*Id* at 1 ¶ 4.] She is also familiar with Mr. Bunch, as he filed a number of grievances after being housing in the infirmary at Miami beginning November 28, 2018. [*Id* at 1 ¶ 5.] She has reviewed two (2) IDOC requests for interview previously filed in this cause of action as ECF 5-2 at 17-18. [*Id* at 1 ¶ 7.] It

---

[4] The facts regarding Defendant Williams are markedly distinct from those regarding the remaining defendants, as Mr. Bunch testified during his deposition that Defendant Williams could not have known of any communications regarding his health and safety in October and November 2018, as he was away from work at that time. [Ex. A at 136:12-138:08.] Undersigned counsel has contemplated proceeding with a partial summary judgment motion limited to Defendant Williams at this time. However, should the relief sought herein be granted, further development of the factual record will be possible. Thus, in the interest of judicial economy, undersigned counsel first seeks to address the further development of newly discovered facts prior to making a final determination as to a dispositive motion.

is her opinion that those requests were likely written by Mr. Cobb. [*Id* at 1 ¶ 8.] At the end of 2018 and beginning of 2019, she discovered that Mr. Cobb was submitting IDOC requests for interview, such as ECF 5-2 at 17-18, that he had written and initialed in the "Action" section as a response in an attempt to falsify satisfaction of the initial, informal grievance step. [*Id* at 1 ¶ 9.]

When she reviewed the aforementioned requests, the writing in the "Action" section in each stood out to her as indicative of Ofd. Cobb's involvement. [*Id* at 1 ¶ 10.] In her opinion, the handwriting in each request also appears to be consistent with Mr. Cobb's handwriting. [*Id* at 1 ¶ 11.] She previously spoke with Mr. Cobb about her concerns regarding his behavior at which time he admitted writing in the "Action" section of requests for interview forms such as ECF 5-2 at 17-18. [*Id* at 1 ¶ 12.]

She has reviewed grievances submitted by Mr. Cobb during November 2018 that reflect the same type of writing in the "Action" section. [*Id* at 1 ¶ 13.] She has also reviewed several grievances submitted by Mr. Bunch in the days after November 28, 2018 that appear to be written by Mr. Cobb. [*Id* at 1 ¶ 14.] Based upon her review of records, it appears that ECF 5-2 at 18 was originally submitted by Mr. Bunch in conjunction with his offender grievance log # 104847. [*Id.*] She has reviewed another grievance and accompanying request for interview submitted by Mr. Bunch in February 2019 that she logged as # 106009 that does not appear to have been written by Mr. Cobb. [*Id* at 1 ¶ 15.]

Thus, it is now apparent that Mr. Bunch may have perpetrated a fraud upon the Court by knowingly submitting false documents and/or statements in an effort to further his cause of action against the Defendants.

### Legal Standard

> The decision to reopen discovery rests within the broad discretion of the Court. And under Federal Rule of Civil Procedure 16(b), a schedule may be modified only for good cause and with the judge's consent. The good cause standard focuses on the diligence of the party seeking the extension. To demonstrate good cause, a party must show that despite its diligence, the time table could not reasonably have been met.
>
> Along with good cause, [when a] motion to extend the discovery deadline [is] untimely, [the moving party] must also show excusable neglect under Federal Rule of Civil Procedure 6(b). Excusable neglect is a somewhat elastic concept, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), demanding an equitable determination that can encompass situations in which the failure to comply with a filing deadline is attributable to negligence, *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 355–56 (7th Cir.1997) (*quoting Pioneer*, 507 U.S. at 394); see also Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd., 646 F.3d 401, 404–05 (7th Cir.2011); Raymond v. Ameritech Corp., 442 F.3d 600, 606 (7th Cir.2006) (explaining that the excusable neglect determination is at bottom an equitable one, taking into account all relevant circumstances surrounding the party's omission (quoting *Pioneer*, 507 U.S. at 395)); *Goodman v. Clark*, No. 2:09 CV 355, 2010 WL 2838396, at *2 (N.D.Ind. July 12, 2010) (same).

*Lapsley v. Fries*, 2012 WL 2721909 at *2 (N.D. Ind. 2012) (internal quotation marks and some citations omitted).

**Relief Sought and Argument in Support**

Presented with this eleventh-hour, yet critical, factual development, undersigned counsel has weighed several options, including: 1) proceeding forth with a partial summary judgment motion as discussed above in footnote 4, 2) a motion for sanctions, up to and including dismissal, 3) a motion to reconsider and dismiss pursuant to 28 U.S.C. § 1915A as a frivolous or malicious lawsuit, or 4) seeking to reopen discovery for a limited purpose. As addressed before, judicial economy tends to support abeyance of a dispositive motion for the moment. A motion for sanctions may be premature and any 28 U.S.C. § 1915A reconsideration may be done *sua sponte* by the Court. Thus, Defendants, by counsel, respectfully move the Court to reopen discovery for a period of ninety (90) days in order to conduct the following additional discovery:

1. Depose Mr. Cobb regarding the related documents likely authored by Mr. Cobb and his aid to Mr. Bunch;
2. Serve additional written discovery upon Mr. Bunch limited to further development of any communications with the named Defendants in October and November 2018 regarding purported threat(s) to his health and safety, the related documents likely authored by Mr. Cobb, and the aid rendered by Mr. Cobb;
3. Dependent upon the come of the aforementioned, depose Mr. Bunch again, and

4. Dependent upon the outcome of the aforementioned, retain the services of a handwriting expert.

Good cause to reopen discovery exists due to the likelihood of fraud. Certainly, prior to the discovery deadline passing, their existed several concerns regarding Mr. Bunch's credibility as addressed above, but the likelihood of document forgery was not yet in consideration. Yet, thanks to the efforts of the staff at Miami, that likelihood is now apparent. Certainly, taking into account all relevant circumstances, excusable neglect likewise exists to warrant reopening discovery.

WHEREFORE, Defendants, by counsel, respectfully move the Court to reopen discovery for ninety (90) days for the aforementioned limited purposes and all other just and proper relief.

Respectfully submitted,

CURTIS T. HILL, Jr.
Indiana Attorney General
Attorney No. 13999-20

Date: <u>January 4, 2021</u>     By:     <u>/s/ Archer Rose, Jr.</u>
Archer Rose, Jr.
Deputy Attorney General
Attorney No. 35969-49

OFFICE OF THE INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204
Telephone: (317) 232-6286
Fax: (317) 232-7979
Email: Archer.Rose@atg.in.gov

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2021, a copy of the foregoing was filed electronically. Service of this filing will be made on all CM/ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that on January 4, 2021, I mailed, by United States Postal Service, first-class postage prepaid, the document to the following non CM/ECF participants:

Justin Bunch
DOC #170730
New Castle Correctional Facility
P.O. Box A
1000 Van Nuys Road
New Castle, IN 47362

                                              Archer Rose, Jr.
                                              Deputy Attorney General

OFFICE OF THE INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204
Telephone: (317) 232-6286
Fax: (317) 232-7979
Email: Archer.Rose@atg.in.gov